# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | ) Chapter 7 Proceedings |
| | ) |
| ADELL D. PORTCH, | ) Case No: 2:23-bk-02120-DPC |
| | ) |
| Debtor. | ) **UNDER ADVISEMENT ORDER** |
| | ) **RE MOTION TO AVOID JUDICIAL** |
| | ) **LIEN PURSUANT TO 11 U.S.C.** |
| | ) **§ 522(f)** |
| | ) |
| | ) (Not for Publication – Electronic |
| | ) Docketing ONLY) [1] |
| | ) |
| | ) |

Before this Court is the Motion to Avoid Judicial Lien Pursuant to 11 U.S.C. § 522(f)[2] ("Motion")[3] filed by Adell D. Portch ("Debtor"). The judgment lien in question is held by J.P. Kush Construction, LLC ("Kush") by virtue of its non-dischargeable judgment recorded in Maricopa County, Arizona on April 2, 2024 (the "Nondischargeable Lien"). Nearly one year earlier, Debtor filed her voluntary bankruptcy petition on April 4, 2023 ("Petition Date").[4] Debtor argues that this post-Petition Date lien impairs her homestead exemption. Kush contends that, although it did not timely object to Debtor's homestead exemption, it may do so now that Debtor has brought her Motion seeking to avoid its Nondischargeable Lien. Kush argues § 522(f) does not apply to a judgment lien recorded against a homestead post-petition, particularly

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.
[2] Title 11 of the United States Code is referenced herein as the "Bankruptcy Code."
[3] Docket Entry ("DE") 53.
[4] DE 1.

where that lien is on account of a nondischargeable debt. Kush also suggests this Court does not have jurisdiction to address Debtor's Motion because Debtor's exempt interest in the Property was no longer property of this estate once Debtor's homestead exemption was allowed. Lastly, Kush contends, at most, this Court must apply the $250,000 Arizona homestead exemption which was in effect when Kush obtained its pre-Petition Date judgment against Debtor, and not the $400,000 homestead exemption approved on November 8, 2022, by Arizona voters under Proposition 209 ("Prop 209").

In summary, this Court finds that this Court does have jurisdiction to enter this final order, that Kush had the right to contest Debtor's homestead exemption once the Debtor brought her Motion to avoid Kush's post-bankruptcy Nondischargeable Lien and that the $400,000 Arizona homestead exemption amount in place on the Petition Date applies to the facts of this case. Accordingly, the Court finds Debtor has carried the burden of proof on her Motion, that she has a homestead exemption totaling up to $400,000, that her exemption is impaired by Kush's Nondischargeable Lien, and that the Nondischargeable Lien is now avoided pursuant to § 522(f) up to the amount of $400,000 of Debtor's equity in the homestead.

## I.    BACKGROUND

Debtor acquired her residence at 14555 West Yucatan Street in Surprise, Arizona ("Property") on March 23, 2021.[5] In her bankruptcy Schedule C, Debtor claimed the Property exempt pursuant to A.R.S. § 33-1101(A).[6] Specifically, she claimed "$400,000. 100% of fair market value, up to any applicable statutory limit."[7] Debtor's Schedule A/B valued the Property on the Petition Date at $800,000.[8] Schedule D listed two voluntary

---

[5] DEs 53 and 55 at p. 2 ¶ 1.
[6] DE 1, p. 17.
[7] Id.
[8] Id. at 10.

liens against the Property in the aggregate amount of $643,843.[9]

Under Bankruptcy Rule 4003(b)(1), the last day to object to Debtor's claimed homestead exemption was June 7, 2023. As there was no timely objection to that claimed exemption, the homestead exemption was allowed.

Prior to the Petition Date, Kush sued Debtor on seven counts in the Superior Court of the State of Arizona ("State Court") at Case No. CV2021-008537 ("State Court Case"). Kush's Amended Complaint filed in State Court included counts based on breach of contract, negligence, breach of warranty, conversion and intentional misrepresentation.[10] Kush obtained a judgment by default on November 7, 2022 ("State Court Judgment").[11] The State Court Judgment does not indicate the legal theory or basis for Kush's claims. The State Court Judgment was recorded in Maricopa County on November 28, 2022, thereby creating an involuntary lien ("State Court Judgment Lien") against the Property. At that time, the Voluntary Liens already encumbered the Property and Arizona's homestead exemption totaled $250,000.

On November 8, 2022, Arizona voters approved the so-called "Predatory Debt Collection Protection Act" in a voter ballot referendum known as Prop 209. Among other things, Prop 209 increased the Arizona homestead exemption from $250,000 to $400,000. The effective date of Prop 209 was December 5, 2022.

On June 26, 2022, Kush filed a complaint ("Complaint")[12] commencing Adversary Proceeding No. 2:23-ap-00118-DPC (the "Adversary Proceeding") against Debtor, seeking a judgment declaring Debtor's obligations to Kush nondischargeable under § 523(a)(2). Judgment was ultimately entered against Debtor in favor of Kush on

---

[9] *Id*. at 20–21. The first lien listed against the Property is in favor of Guild Mortgage in the amount of $557,640 and indicates it was a debt incurred on "01-2022." The second lien is in favor of Goodleap, LLC against a "Solar Unit" in the amount of $86,203. The "Solar Unit" is presumably affixed to the Property. See DE 55 at p. 4. These liens are identified herein as the "Voluntary Liens."

[10] The Amended Complaint filed in State Court is attached as Exhibit 3 to the Adversary Proceeding Complaint referenced below.

[11] The State Court Judgment is attached as Exhibit 2 to the Adversary Proceeding Complaint referenced below.

[12] Adversary Proceeding DE 1.

March 18, 2023[13] (the "Nondischargeable Judgment"). The Nondischargeable Judgment was recorded in Maricopa County on April 2, 2024, thereby creating the Nondischargeable Judgment Lien against the Property.

Debtor filed a motion to avoid the State Court Judgment Lien.[14] Debtor also filed the instant Motion in which she seeks to avoid the Nondischargeable Judgment Lien.[15] Kush objected to both motions[16] but eventually conceded that Debtor was entitled to an order avoiding the State Court Judgment Lien.[17] On November 26, 2024, the Court entered its Order[18] avoiding the State Court Judgment Lien pursuant to §522(f). However, it is the Nondischargeable Judgment Lien which is the focus of Debtor's § 522(f) lien avoidance Motion.

Kush responded to the Motion.[19] Oral arguments were heard on September 23, 2024.[20] Kush later filed its reply memorandum[21] in which Kush replied to Debtor's October 7, 2024 Memorandum.[22] The Court took this matter under advisement after final briefs were filed.

## II. JURISDICTION

The Court has jurisdiction over this bankruptcy case and the issues described herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B), 11 U.S.C. §§ 522(c) and (f) and Bankruptcy Rule 4003.

---

[13] 2:23-ap-00118-DPC DE 53.
[14] DE 55.
[15] DE 53.
[16] DE 65.
[17] DE 81.
[18] DE 92.
[19] DE 65.
[20] DE 81.
[21] DE 85.
[22] DE 83.

### III. ISSUES

1.   Does this Court have jurisdiction to address Debtor's § 522(f) lien avoidance motion where the judgment lien sought to be avoided was recorded well after the subject property was no longer property of the bankruptcy estate?

2.   May a judgment creditor contest a debtor's claimed homestead exemption when its judgment lien becomes the subject of debtor's § 522(f) motion, even though no creditor objected to the claimed homestead exemption under the time limits set forth in Bankruptcy Rule 4003?

3.   Under 11 U.S.C. § 522(f), may a debtor avoid a judgment lien on a pre-petition debt which became a post-petition nondischargeable judgment lien against the debtor's homesteaded property?

4.   Does the Saving Clause contained within Prop 209 require this Court to apply the Arizona homestead exemption amount which was in effect when Kush obtained its pre-Petition Date State Court Judgment?

### IV. APPLICABLE LAW

A.   _Tillman_ and This Court's Jurisdiction Over the Motion.

In a recent Ninth Circuit decision which originated in this Court, a split panel held that exempt property is not property of a bankruptcy estate.[23] In a footnote,[24] Kush suggests that, since the Property is no longer property of Debtor's bankruptcy estate, this Court does not have jurisdiction to avoid Kush's Nondischargeable Lien. Presumably Kush advances this argument because it acknowledges the Property was exempt at the time the Nondischargeable Lien was recorded.

---

[23] _In re Tillman_, 53 F.4th 1160, 1169 (9th Cir. 2022) cert. denied sub nom. _Warfield v. United States_, 144 S.Ct. 1392 (2024).
[24] DE 85, n.3.

## B. § 522(c) Protection of Exempt Property

"An essential element of an individual debtor's fresh start in bankruptcy is the debtor's ability to protect exempt property from the claims of creditors, not only while the case is pending but after it is concluded. This opportunity for a fresh start is carried out, in part, through section 522(c )."[25] 11 USC § 522(c) states:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under § 502 of this title as if such debt had arisen, before the commencement of the case, except-
> (1)     a debt of a kind specified in paragraph (1) or (5) of § 523(a)[26] (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);
> (2)     a debt secured by a lien that is-
>         (A)(i) not avoided under subsection (f) or (g) of this section or under §§ 544, 545, 547, 548, 549, or 724(a) of this title; and
>                 (ii)     not void under § 506(d) of this title; and
>         (B) a tax lien, notice of which is properly filed; or

> . . .

Under § 522(c), "exempt property is not liable, either during or after the case, for any debt of the debtor that arose before the commencement of the case, or that is treated under section 502 as if such debt had arisen before the commencement of the case."[27] Moreover, "[e]xempt property is not liable for the pre-petition debts of the debtor whether or not a discharge is entered in the case, and even if the debt in question is excepted from discharge."[28] In this regard, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") has held that "[t]he legislative history of [§ 522(c)] also shows that it was enacted to insulate exempt property from any nondischargeable prepetition debts which are not listed as

---

[25] 4 Collier on Bankruptcy, pages 522-140, section 522.14[1] 16th Edition.
[26] §523(a)(1) concerns nondischargeable taxes. §523(a)(5) concerns nondischargeable domestic support obligations ("DSO's").
[27] Id.
[28] Id.

exceptions."[29]

### C. Bankruptcy Rule 4003

Section 522(d) of the Bankruptcy Code identifies a list of assets exempt from creditor claims but also permits states to opt out of the federal exemption scheme.[30] Arizona has opted out of the federal exemption scheme.[31] Debtor's homestead exemption claimed in this case is the exemption available under A.R.S. § 33-1101. Bankruptcy Rule 4003(a) requires a debtor to file a schedule claiming assets as exempt. "When the homeowner files bankruptcy, her right to claim an exemption is fixed as of the petition date; this is often referred to as the 'snapshot rule.'"[32] Bankruptcy Rule 4003(b)(1) requires creditors to file objections to the debtor's claimed exemptions within 30 days after the first meeting of creditors is concluded. As the U.S. Supreme Court has noted, "[u]nless a party in interest objects, the property claimed exempt is exempt."[33]

### D. *Morgan* and a Creditor's Second Bite at the Exemption Apple.

Lien avoidance sought under § 522(f) requires the court to engage in a two-step analysis.[34] First, the court must determine whether the debtor has a valid homestead exemption under § 522(l).[35] Next, the court must determine whether § 522(f) may be used by the debtor to avoid a creditor's lien.[36]

As the BAP observed in *Morgan*, the determination that a debtor has claimed a valid homestead exemption, "…however, does not end our inquiry." In *Morgan*, the BAP

---

[29] *In re Farr*, 278 B.R. 171, 177 (9th Cir. BAP 2002)(citing S. Rep. No. 95-989, at 76 (1978); H. R. Rep. No. 95-595, at 361 (1977)).
[30] *See* § 522(b)(2).
[31] *See* A.R.S. § 33-11133(B).
[32] *Klein v. Anderson (In re Anderson)*, 988 F.3d 1211, 1213 (9th Cir. 2021) (citing *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012)).
[33] *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S. Ct. 1644 (1992)
[34] *In re Galvan*, 110 B.R. 446, 450 (9th Cir. BAP 1990).
[35] *Id*.
[36] *In re Morgan*, 149 B.R. 147, 150 (9th Cir. BAP 1993).

concluded "that a creditor who has not timely objected to a claim of exemption may nevertheless challenge the validity of the exemption when defending a lien avoidance motion under §522(f)."[37] Although this Court believes the wisdom of the holding in *Morgan* is debatable, this Court long ago adopted the policy of following BAP unless its rulings are distinguishable or are contrary to an on-point holding by an Article III judge in the District of Arizona.[38] Having found no contrary holding by this District's Article III bench, this Court will follow the BAP's holding in *Morgan*.

### E. § 522(f) Factors

Section 522(f) states:

> (1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is
>
> (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);
>
> …
>
> 2 (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) The amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
> (B) In the case of a property subject to more than one lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to the other liens.

---

[37] *Id.* at 152.
[38] *In re Sample*, 2:10-38373-DPC, 2013 WL 3759795 (Bankr. D. Ariz. July 15, 2013).

1

  (C) This paragraph shall not apply with respect to a judgment
    arising out of a mortgage foreclosure.

2

3

           …

4

5   For the Debtor to succeed under § 522(f), she must demonstrate: "(1) there was a fixing

6 of a lien on an interest of the debtor in property[39]; (2) such lien impairs an exemption to

7 which the debtor would have been entitled; and (3) such lien is a judicial lien."[40]

8

9       F.   <u>Nondischargeable judgments and the applicability of § 522(f).</u>

10    On its face, § 522(f) does not preclude avoidance of a judgment lien on a debt

11 which is nondischargeable. Recently, the American Bankruptcy Institute's Bill Rochelle

12 featured a December 2, 2024, decision from bankruptcy Judge David Thuma (D. New

13 Mexico)[41] which addressed the question of whether § 522(f) could be employed to avoid

14 a pre-bankruptcy judicial lien if the debt was incurred by fraud. Judge Thuma did not

15 address the merits of whether that debt was incurred by fraud but he did hold that he

16 lacked "legal and equitable power to deny the [d]ebtor's § 522(f) lien avoidance motions

17 based on [d]ebtor's alleged fraud in creating the underlying claims."[42] He also noted that

18 the U.S. Supreme Court, in *Law v. Siegel*[43] required that, in exercising its equitable

19 powers, a bankruptcy court will be bound by the confines of the Bankruptcy Code. Judge

20 Thuma pointed out that the Tenth Circuit has held[44] that § 522 exemptions claimed by a

21 debtor cannot be invalidated absent a valid statutory basis and that the bankruptcy courts

22

23

---

[39] Put a different way, the Debtor possessed the homestead property when the judicial lien attached. This requirement is not an issue in this case but was addressed in a case before the United States Supreme Court. See *Farrey v. Sanderfoot*, 500 U.S. 291 (1991).

24

[40] *In Re Catli*, 999 F. 2d. 1405, 1406 (9th Cir. 1993).

[41] *In re Mirabal*, No. 23-10862 - t13.

25

[42] This ruling is consistent with Collier's discussion of this topic. *See* § VI(A).

[43] 571 U.S. 415 (2014).

26

[44] *Clabaugh v. Grant (In re Grant)*, 658 Fed. App'x. 411, 414 (10th Cir. 2016).

Case 2:23-bk-02120-DPC   Doc 114   Filed 02/05/25   Entered 02/05/25 16:21:58   Desc
Main Document   Page 9 of 36

cannot "add exceptions not found in the statute."[45]

Mr. Rochelle concluded his analysis of *Mirabal* by presaging an issue now before this Court when he wrote:

> Assume that Judge Thuma avoids the [pre-petition] judicial liens. Next, assume that Judge Thuma later rules that the (now unsecured) debts are nondischargeable. What then? It doesn't seem as though the creditors could again obtain a judgment lien against the home. Would the creditor be limited to a supplemental proceeding attempting to locate and attach assets other than the home?[46]

Bankruptcy Judge Elaine Hammond (N.D. California) addressed this very question and held that the fact that a judgment creditor's "judicial lien was recorded post-petition does not prohibit it from being avoided pursuant to 11 U.S.C. § 522(f)."[47] Judge Hammond's *Feathers* decision is aligned with both the Tenth Circuit BAP[48] and the Third Circuit Court of Appeals.[49]

In apparent conflict with the Third Circuit, the Tenth Circuit BAP and Judge Hammond, the Ninth Circuit BAP has, on at least two occasions, stated that "debtor's § 522(f) lien avoidance rights [like their homestead exemption rights] are also determined as of the petition date."[50]

---

[45] *Id. Interestingly*, Judge Thuma, at footnote 4, revealed that "New Mexico law could provide creditors relief from a claimed homestead exemption in rare circumstances in which a debtor's "malicious, fraudulent, or intentional tortious conduct involve[d] the homestead itself." *Mirabal* at 7. Here, the parties have not cited this Court to any comparable Arizona statute or case law nor did this Court find any similar precedent or statute in Arizona.

[46] Bill Rochelle, *Having Committed Fraud Doesn't Prevent a Debtor from Vacating a Judicial Lien*, AM. BANKR. INST., https://www.abi.org/newsroom/daily-wire/having-committed-fraud-doesn%E2%80%99t-prevent-a-debtor-from-vacating-a-judicial-lien.

[47] *In re Feathers*, No. 13-52816 CN, 2015 WL 1598087 (Bankr. N.D. Cal. Apr. 7, 2015).

[48] *Cushing v Vaughan* (*In re Vaughan*), 311 B.R. 573 (10th Cir. BAP 2004)(noting § 522(f) does not tell us when the lien must attach).

[49] *Rosenberg v. Corio* (*In re Corio*), 371 Fed. App'x. 352 (3rd Cir. 2010)(noting § 522(f) does not contain language preventing avoidance of a judicial lien obtained after the petition date).

[50] *In re Goswami*, 304 B.R. 386, 392 (9th Cir. BAP 2003). *See also In re Khurana*, No. 3:13-BK-20058-TLM, 2019 WL 7372664 (9th Cir. B.A.P Dec. 16, 2019)(citing *Goswami* for the proposition that "a debtor's § 522(f) lien avoidance rights are determined as of the petition date").

## G.  Voter Initiated Propositions and Prop 209 Saving Clause.

As noted above, a debtor is entitled to exempt certain assets from their creditors under § 522(b)(1) of the Bankruptcy Code. Section 522(d) creates a laundry list of federal exemptions but § 522(b)(2) also notes that a state may opt out of the federal exemption scheme and create its own exemption laundry list. In A.R.S. § 33-1133(B), the State of Arizona opted out of the federal exemption scheme. For the purposes of this case, Arizona's homestead exemption is applicable.[51]

Arizona's homestead exemption has changed over the years. Immediately prior to December 5, 2022, A.R.S. § 33-1101, in relevant part, read as follows:

> A. Any person eighteen years of age or over, married or single, who resides within this state may hold as a homestead exempt from execution and forced sale, **not exceeding $250,000** in value, any one of the following:
>
> 1. The person's interest in real property in one compact body on which exists a dwelling house in which the person resides.
> 2. The person's interest in one condominium or cooperative in which the person resides.
> 3. A mobile home in which the person resides.
> 4. A mobile home in which the person resides plus the land on which that mobile home is located.
>
> B. Only one homestead exemption may be held by a married couple or a single person under this section. The value as specified in this section refers to the equity of a single person or married couple. If a married couple lived together in a dwelling house, a condominium or cooperative, a mobile home or a mobile home plus land on which the mobile home is located and are then divorced, the total exemption allowed for that residence to either or both persons shall not exceed **$250,000 in value**.
>
> C. The homestead exemption, not exceeding the value provided for in subsection A of this section, automatically

---

[51] Arizona's exemption laws are applicable here because, at all relevant times, Debtor was an Arizona resident and she declared the Property exempt under Arizona law.

attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter. The homestead exemption does not attach to the person's interest in identifiable cash proceeds from refinancing the homestead property. Only one homestead exemption at a time may be held by a person under this section.

D. For purposes of determining the amount of equity in a homestead property that is sold or for determining whether the property owner is receiving cash back from refinancing the homestead property, the parties may rely on the valuation of the property in the final closing document disclosure that is used for that transaction.

(Emphasis added.)

On November 8, 2022, Arizona voters approved Prop 209 which, among other things, revised § 33-1101(B) to provide:

Only one homestead exemption may be held by a married couple or a single person under this section. The value as specified in this section refers to the equity of a single person or married couple. If a married couple lived together in a dwelling house, a condominium or cooperative, a mobile home or a mobile home plus land on which the mobile home is located and are then divorced, the total exemption allowed for that residence to either or both persons shall not exceed **$400,000 in value**.

(Emphasis added.)

Prop 209 became effective on December 5, 2022. Importantly, Prop 209 contained a clause ("Saving Clause") that states:

This act applies prospectively only. Accordingly, it does not affect rights and duties that matured before the effective date of this act, contracts entered into before the effective date of this act or the interest rate on judgments that are based on a written agreement entered into before the effective date of this act.

The Arizona Supreme Court has had occasion to review voter approval initiatives and observed that "with only a few exceptions, if the language [of the proposition] is clear and unambiguous, we apply it without using other means of statutory construction."[52] If ambiguity exists, courts reviewing the language of a voter approved initiative must try to discern the electorate's intent. "Popular intent" may be difficult to determine but the Arizona Supreme Court directs courts to review "the publicity pamphlet for [the proposition in question],[53] the stated purpose of the proposition, and the subsequent history of the measure. . . ."[54] Publicity pamphlets are required by Arizona law to be prepared by a legislative council, pursuant to A.R.S. § 19-123. The legislative council is required to prepare and file "an analysis of the provisions of each ballot proposal of a measure or proposed amendment."[55] A "publicity pamphlet" prepared by the council is then given to voters.[56] In *Calik* the council's publicity pamphlet was found to aid in determining the intent behind the proposition at issue in that case. That court also reviewed prior voter initiatives, subsequent legislation and then the proposition in question.[57]

In addressing the Saving Clause of Prop 209, the publicity pamphlet ("Publicity Pamphlet") states:

> Proposition 209 would only apply to contracts and agreements
> entered into on or after the effective date of this measure.

Three Arizona Court of Appeals cases have addressed Prop 209's Saving Clause since December 5, 2022. In an unpublished decision,[58] the Arizona Court of Appeals addressed the impact of Prop 209's effect on a default judgment creditor's attempts to

---

[52] *Calik v. Kongable*, 990 P.2d 1055, 1057 (1999).
[53] *See* 209 Proposition Publicity Pamphlet attached as Exhibit 1.
[54] *Calik*, 990 P.2d at 1059.
[55] A.R.S. § 41-1304(A)(9).
[56] *Calik*, 990 P.2d at 1059.
[57] *Id*.
[58] *HJ Ventures, LLC v. Candelaria*, No. 1 CA-CV 23-0331, 2024 WL 449970 (Ariz. Ct. App. Feb. 6, 2024).

garnish the judgment debtor's wages. That court noted the record did "not indicate the basis for that judgment." The judgment creditor argued that Prop 209's Saving Clause precluded retroactive application of Prop 209's increased wage garnishment exemption to the creditor's judgment because that judgment pre-dated Prop 209 by several years. The court rejected this argument for two reasons: (1) "a garnishment proceeding is a separate action from the underlying debt;" and (2) the "rights and duties" at issue in a garnishment proceeding affect the garnishee (not the judgment creditor or debtor) and there was no "contractual agreement addressing the amount of money to be garnished." The court found the Saving Clause did not apply in that case.

The next Arizona Court of Appeals case to address the Saving Clause of Prop 209 was decided on April 30, 2024. In *Ariz. Creditors Bar Ass'n*,[59] the Court determined that

> . . . even if the purported vagueness of the Saving Clause has not yet caused the Judgment Creditors any distinct and palpable injury, the Judgment Creditors' challenge presents an actual controversy between interested parties as to the constitutionality of [Prop 209], which is all that is required for standing to seek a declaratory judgment . . .

The Court went on to determine:

> On the other hand, the Judgment Creditors [and defendants] lacked standing to ask for a declaration explaining whether and how [Prop 209] applies when a pre-[Prop 209] judgment is used to initiate a post-[Prop 209] garnishment proceeding.[60]

Turning to the plaintiffs' ("Judgment Creditors") argument that the Saving Clause is so vague and unintelligible as to be unconstitutional, the court held that, if the Saving Clause contained only the opening sentence ("This act applies prospectively only."), "the Judgment Creditors' vagueness challenge would undoubtedly lack merit."[61] Focusing on the second (and final) sentence of the Saving Clause, the court noted such sentence

---

[59] *Ariz. Creditors Bar Ass'n v. State*, 549 P.3d 205 (Az. App. 2024).
[60] *Id*. at 211.
[61] *Id*. at 213.

"provides three examples of when [Prop 209] does not apply. The question, therefore, is whether any of those three examples is so far afield from the ordinary retroactivity framework to render the Saving Clause untenably vague."[62] Answering that question the court found the Saving Clause is "not materially different from what courts apply to any new statute . . . Thus, the Saving Clause is not unconstitutionally vague on its face" nor is it "unintelligible." The Court then left it to other courts to "struggle with or disagree about how [the Saving Clause] framework plays out in specific scenarios, including where more than one of the Saving Clause's three examples are simultaneously implicated."[63]

The third, and final most recent, case to address the Saving Clause of Prop 209 was decided on July 26, 2024. In *Silence*, the court addressed Prop 209's applicability to a wage garnishment order and an underlying judgment which pre-dated the effective date of Prop 209.[64] The court held that Prop 209 wage exemption amounts applied to garnished wages earned after the effective date of Prop 209, even though a continuing wage garnishment order was obtained before the effective date of Prop 209. The court stated that "because the amount of each future paycheck subject to the garnishment order has not yet been determined, Proposition 209's statutory changes affect the amount that may be garnished from each pay period after Proposition 209 because effective."[65] In other words, the amount of wages to be garnished did not "mature," within the meaning of the Saving Clause, until after the effective date of Prop 209. In essence, the court held that the Saving Clause of Prop 209 did not "save" the pre-Prop 209 wage garnishment exposure (25%) from the applicability of the Prop 209 wage garnishment exposure (10%).

---

[62] *Id.* at 214.
[63] *Id.*
[64] *Silence v. Betts*, 553 P.3d 192 (Ariz. App. 2024).
[65] *Id.* at 194.

# V. ANALYSIS OF THE LAW APPLIED TO THE FACTS OF THIS CASE.

## A. The Court's Jurisdiction to Enter Final Orders on the Motion

Kush suggests this Court does not have jurisdiction to hear Debtor's Motion because the Property is no longer property of this bankruptcy estate. Whether one agrees with the Ninth Circuit's holding in *Tillman* that an exempt property is no longer property of a bankruptcy estate,[66] § 522(f) does not pertain to property of a bankruptcy estate. In *Goswami* the BAP noted that the "right to avoid a lien under § 522(f) is a 'personal' right of the debtor which exists independent of the case administration."[67] Section 522(f) permits a debtor to ". . . avoid the fixing of a lien on an interest of the debtor in property . . . ." It is the debtor's property interests, not the bankruptcy estate's property interests, that are implicated in § 522(f). This makes sense, of course. Were it otherwise, and Kush's argument held water, § 522(f) motions could never be addressed by a bankruptcy court because the subject property, by definition, must be exempt. Pursuant to Bankruptcy Rule 4003(d), § 522(f) motions are brought in the bankruptcy court and are treated as contested matters under Bankruptcy Rule 9014. This Court has jurisdiction to enter final orders on exemption issues and this Court has jurisdiction to enter final orders on § 522(f) motions. Kush's objection to this Court's jurisdiction is hereby overruled.

## B. Validity of Debtor's Claimed Homestead Exemption

Debtor's homestead exemption claimed in the Property was filed in her Schedule C on the Petition Date.[68] Bankruptcy Rule 4003(b) provides that a claimed exemption is allowed unless a party in interest objects within 30 days after conclusion of the § 341 first meeting of creditors. There were no timely objections to the Debtor's claimed exemption in the Property. Whether the Debtor had a colorable claim to this objection or

---

[66] In *Tillman*, this Court, the District Court and the dissent all disagreed with this proposition announced by the Ninth Circuit's two-judge majority. (No, this Court is not bitter!)
[67] *Goswami*, 304 B.R. at 392 (citing *In re Ricks*, 89 B.R. 73, 75 (9th Cir. BAP 1988)).
[68] DE 1.

not, Kush cannot now generally contest such exemption. The claimed homestead exemption is valid.[69] Kush even acknowledges that, for the purposes of Debtor's efforts to avoid Kush's pre-bankruptcy State Court Judgment Lien, the homestead exemption is valid, and the pre-petition lien is avoidable under § 522(f).[70] The Court confirmed this fact by entering an order avoiding Kush's State Court Judgment Lien.[71] Moreover, Kush implicitly acknowledges Debtor has a valid homestead exemption in the Property when it argues the Court has no jurisdiction to address the Motion once it is exempted and no longer property of the estate.

## C. A Post-Petition Nondischargeable Lien May Be Avoided Where the Judgment Arose Before the Petition Date

Although this Court avoided Kush's State Court Judgment Lien, *Morgan* tells us that, a creditor who failed to timely object to a debtor's homestead exemption is afforded another chance to challenge a homestead exemption once that creditor later faces a debtor's § 522(f) lien avoidance motion.[72] Long after objections to Debtor's claimed exemptions were due, the Debtor filed her § 522(f) Motion seeking to avoid Kush's non-dischargeable lien. In its defense to that Motion, Kush is challenging the Debtor's claimed homestead exemption as it pertains to the Nondischargeable Lien. *Morgan* permits Kush's challenge in the context of a § 522(f) lien avoidance motion even though Kush did not timely object to Debtor's homestead in the first instance. Kush's objection to the Debtor's homestead exemption is timely in connection with Debtor's efforts to avoid the Nondischargeable Lien.

---

[69] *See Taylor*, 112 S.Ct. at 1648.
[70] DE 85, p. 4.
[71] DE 92.
[72] *Morgan*, 149 B.R. at 152.

The Debtor has the burden of persuasion on its Motion.[73] Under § 522(f), the Debtor must demonstrate that Kush's Nondischargeable Lien is a judicial lien which impairs her homestead exemption and must further demonstrate the extent of that impairment. First, the Nondischargeable Lien in question is certainly a judicial lien. Further, Debtor's claimed homestead exemption is unquestionably impaired by Kush's Nondischargeable Lien because the Property is listed on Debtor's Schedule A/B as having a Petition Date value of $800,000.[74] Debtor's Schedule D reveals only the first Voluntary Liens against the Property in the aggregate amount of about $643,843.[75]

This Court must determine whether this Court's post-Petition Date finding that Kush's claim is nondischargeable precludes avoidance by the Debtor of the Nondischargeable Lien. As to this point, the Court agrees with Judge Thuma's *Mirabal* decision. Even more importantly, the Court follows the decision in *Farr*[76], which held that § 522(f) does not distinguish between dischargeable and nondischargeable judicial liens.

The next hurdle to be cleared by Debtor in her Motion appears in § 522(f)(2)(C) which says § 522(f) does not apply to mortgage foreclosure judgments. Kush's claim does not stem from a mortgage foreclosure. Another hurdle appears in § 522(f)(1)(A) which tells us § 522(f) does not permit avoidance of a judicial lien arising from a DSO under § 523(a)(5). Kush's claim is not based on a DSO. Yet another hurdle is found at § 522(c)(1) which excepts from exemptions DSO's and taxes which are nondischargeable under § 523(a)(1). Kush's claim is not a nondischargeable tax claim nor is it a DSO.

---

[73] *In re Catli*, 999 F.2d at 1406. Somewhat paradoxically, a party objecting to a Debtor's exemptions "has the burden of proving the exemptions are not properly claimed." *See* USCS Bankruptcy R 4003(c).

[74] DE 1, p. 10. The Debtor apparently believes the value of the Property has increased since the Petition Date. On August 11, 2024, Debtor filed a motion to compel abandonment of the Property indicating the Debtor then believed the Property to be worth $912,000. See DE 57 at p.2. If true, this would mean the Debtor then held just over $200,000 in equity in the Property.

[75] DE 1, p. 21.

[76] 278 B.R. at 177.

Since § 522(f) does not explicitly exclude its applicability to nondischargeable judgments based on fraud (or any other nondischargeable claim beyond certain taxes and DSO's), this Court finds § 522(f) does not bow to nondischargeable judgment liens which, by their very nature are post-petition liens. This finding is consistent with the Third Circuit's holding in *Corio*, the Tenth Circuit BAP's conclusion in *Vaughan* and Judge Hammond's decision for the Northern District of California in *Feather*. This Court hereby explicitly adopts the rationale supporting the decisions in each of these cases.

Kush points to the *Khurana* case in support of its position that Debtor's Motion must be denied. The *Khurana* court declared that a debtor's § 522(f) lien avoidance rights are determined as of the filing of debtor's bankruptcy petition. Kush suggests this bars Debtor from seeking avoidance of the Nondischargeable Lien because it was recorded nearly a year after the Petition Date. However, in *Khurana* the BAP noted the debtor did not even have rights in the subject property at the time he filed his bankruptcy petition. The bankruptcy court also noted that the debtor "failed to establish that a judgment lien even existed against the [subject property]." In effect, the BAP rejected the debtor's § 522(f) motion because the subject property was not the debtor's to protect and because there was no lien to avoid. *Khurana* is an unreported decision which is factually dissimilar to the case at bar. This Court will, therefore, not apply its language to this case.[77]

The *Khurana* court quoted *Goswami*, when it announced a "debtor's § 522(f) lien avoidance rights are also determined as of the petition date."[78] In *Goswami*, the BAP focused on § 522(f) as a personal right of a debtor that exists, whether or not the property was automatically abandoned under § 554(c) when the debtor's underlying administrative case was closed. Neither *Goswami* nor *Khurana* dealt with facts akin to

---

[77] The *Khurana* court's proclamation that a debtor's § 522(f) lien avoidance rights are determined as of the petition date could also be viewed as dicta.

[78] *Goswami*, 304 B.R. at 392.

the case at bar where the Property is unquestionably owned by the Debtor on the Petition Date and where the Debtor unquestionably claims the Property was exempt on the Petition Date. It is useful to know that a debtor's § 522(f) lien avoidance rights exist as to the exempt property as of a petition date but neither *Goswami* nor *Khurana* speak to the question of whether a pre-bankruptcy debt reduced to a post-petition nondischargeable judgment lien is avoidable under § 522(f).

Section 522(f) does not distinguish between pre- or post-bankruptcy judgment liens. Nor does this statute speak to the timing of liens recorded against an exempt homestead. §522(f) does not preclude avoidance of a lien recorded against a debtor's homestead after their bankruptcy was filed, at least until the underlying bankruptcy case is closed. Here, the Debtor's case is not and has not been closed. This Court finds that, under § 522(f), Debtor's homestead exemption protects her equity in the Property against Kush's post-Petition Date Nondischargeable Lien.

A question then remains as to the magnitude of the Debtor's exemption. Is Debtor's homestead exemption in the pre-Prop 209 amount of $250,000 or is it the $400,000 exemption amount identified in Prop 209?

### D. The Amount of Debtor's Homestead Exemption

Having determined that Kush's Nondischargeable Lien is subject to avoidance under § 522(f), the parties have also asked that the Court address the more difficult question concerning the amount of Debtor's homestead exemption. In her Schedule C, Debtor claimed a $400,000 homestead exemption under A.R.S. § 33-1101(A). Kush contends that Debtor's homestead is limited to the $250,000 homestead amount allowable under Arizona law at the time its claim against Debtor was reduced to judgment in the State Court and when that judgment was recorded to produce the State Court Judgment Lien.

Kush contends the Prop 209 Saving Clause requires this Court to apply the version of A.R.S. § 33-1101 that existed when he obtained his State Court Judgment, i.e. a $250,000 homestead exemption.[79] Debtor contends the Saving Clause is inapplicable and that the Prop 209 version of § 33-1101 applies to her claimed exemption, i.e. $400,000.

The Court has not found, nor have the parties cited this Court to any Arizona case directly deciding the issue before this Court, namely whether the Saving Clause of Prop 209 requires this Court to apply the homestead exemption amount applicable when Kush obtained his State Court Judgment Lien or whether the Court must apply the homestead exemption amount in effect on the Petition Date, notwithstanding the language of the Saving Clause.

The $150,000 difference between the Debtor's view and Kush's position boils down to the operation of Prop 209's Saving Clause. This $150,000 difference may be important to the Debtor because she apparently intends to sell the Property once the homestead exemption issues are finally resolved. She apparently believes she will have difficulties closing a sale at a title company unless this Court clarifies her exemption rights in view of Kush's Nondischargeable Lien.[80]

This Court finds that, absent the Prop 209 Saving Clause, Debtor was entitled to a homestead exemption of up to $400,000 because the "Snapshot Rule"[81] requires the Court to allow a properly claimed exemption which was in effect as of the Petition Date. So, the final remaining question for the Court to address is whether the Prop 209 Saving

---

[79] The Debtor's Schedules reflect the Property value at $800,000 on the Petition Date. The Voluntary Liens against the Property total $643,843, leaving equity for the homestead exemption in the amount of $156,157 as of the Petition Date. This would suggest that Prop 209's impact on the applicable exemption amount is irrelevant to this case. By August 2024, the Debtor claims the Property was worth $912,000, leaving equity in an amount just above $200,000. In any event, by the time Kush's Nondischargeable Lien was recorded (or even by today's date) the Property value may have increased and/or the Voluntary Liens may have decreased to the point that Debtor's equity in the Property may exceed $250,000. If Debtor's equity in the Property is not now and never will be above $250,000, the Court recognizes its Prop 209 analysis may be superfluous.
[80] DE 83, p. 8.
[81] See § IV(c).

Clause limits Debtor's homestead exemption to $250,000 since that was the homestead amount applicable when Kush obtained his pre-Petition Date State Court Judgment.

The Arizona Supreme Court tells us that a voter ballot initiative like Prop 209 must be read according to its express language if that proposition's language is clear and unambiguous.[82] If the language of the proposition is not clear and unambiguous, Arizona courts are to look to the proposition's publicity pamphlet, to the proposition's stated purpose, and to subsequent history of the measure.

Prop 209 is clearly meant to apply prospectively. The Saving Clause says as much. But what does it mean for a referendum to be applied prospectively? The Saving Clause itself tells us what it means in the context of Prop 209:

> it does not affect rights and duties that matured before the effective date of this act, contracts entered into before the effective date of this act or the interest rate on judgments that are based on a written agreement entered into before the effective date of this act.

It appears to this Court that this "definition" of what it means for Prop 209 to be applied prospectively goes far beyond what courts might ordinarily decide prospective application of Prop 209 to mean. More importantly, what is the Saving Clause telling us when it says Prop 209 does not affect "rights and duties" that existed before the effective date of Prop 209 and what does it take for such rights and duties to have "matured" before the effective date of Prop 209? Further, what does it mean for Prop 209 to not affect "contracts or agreements" entered into before the effective date of Prop 209? The absence of answers to these questions suggest to this Court that, while the Saving Clause is not "unintelligible,"[83] the Saving Clause is not clear and unambiguous. This Court is not alone in holding this belief. At least three sets of litigants challenged Prop 209's Saving

---

[82] *Calik*, 992 P.2d at 1057.
[83] *Ariz. Creditors Bar Ass'n*, 549 P.3d at 214.

Clause.

Where a proposition is not unambiguous, the Court must look to the publicity pamphlet, the intention behind the proposition, and the subsequent history pertaining to the proposition. This Court knows of no subsequent legislative history but, of course, at least three Arizona appellate decisions have touched on Prop 209 since its effective date. This Court will discuss those cases in a moment. As to the intent behind Prop 209, it is clear from the Publicity Pamphlet's arguments "for" and "against" Prop 209, this referendum was publicized as a means to curb certain creditor abuses, especially in connection with medical bill collection efforts. The Publicity Pamphlet's summary of the Saving Clause is what commands this Court's attention. It flatly states:

> Proposition 209 would apply only to contracts and agreements entered into on or after the effective date of the measure.

This language is more sweeping than the actual language of the Saving Clause yet it was part of the package voters looked to in determining whether to vote for or against Prop 209.

If the Saving Clause stopped at "[t]his Act applies prospectively only" then the increased exemption rights afforded the Debtor would be available to the Debtor only after the effective date of Prop 209, i.e. December 5, 2022. What comes after this first sentence, however, does not merely describe what it means to prospectively expand exemption rights. Rather, what follows that first sentence greatly limits what would otherwise constitute the prospective expansion of a debtor's exemption rights. The second and final sentence of the Saving Clause declares that the exemption rights expanded by Prop 209 will not affect (1) rights and duties that matured before December 5, 2022, (2) contracts and agreements entered into before December 5, 2022, and (3) judgment interest rates that are based on written agreements entered into before December 5, 2022. What debt protection Prop 209 giveth, the Saving Clause seems to

taketh from debtors.

The Publicity Pamphlet states the implication of the Saving Clause even more succinctly and forcefully: Prop 209 only applies to contracts and agreements entered into after December 5, 2022. If the Prop 209 story ended there, this Court would feel constrained by the Saving Clause, as interpreted by the Publicity Pamphlet, to find that Prop 209 expanded Debtor's homestead exemption rights to $400,000 but only as to creditors whose contracts and agreements were entered into after December 5, 2022. Since Kush's State Court Judgment was possibly based on Kush's contract claims against Debtor, absent clarification from Arizona courts regarding Prop 209's Saving Clause, this Court might find Debtor's homestead exemption, as it pertained to Kush, would be limited to Arizona's $250,000 cap which existed prior to December 5, 2022. But the Prop 209 story did not end there.

To summarize the three Arizona Court of Appeal's decisions addressing Prop 209's Saving Clause, one case found the Saving Clause was "not unintelligible" nor was it "unconstitutionally vague on its face."[84] An unreported case found that the post-December 5, 2022 garnishment of a debtor's wages in collection of a pre-December 5, 2022 judgment was a separate action implicating the "rights and duties" of the garnishee, not the judgment creditor or debtor so the Prop 209 exempt wage amounts were applied to that wage garnishment action.[85] Finally, in a reported decision, the Arizona Court of Appeals held that Prop 209's wage exemption amount was applicable to a pre-December 5, 2022 judgment and continuing wage garnishment because the amount of the wages to be garnished post-December 5, 2022 did not "mature" until the wages were earned.[86]

This Court, of course, must adopt current Arizona case law on the question of the

---

[84] *Ariz. Creditors Bar*, 549 P.3d at 214.
[85] *H.J. Ventures*, 2024 WL 449970.
[86] *Silence*, 553 P.3d at 196.

constitutionality of the Saving Clause. This Court also adopts the lessons set forth in the *HJ Ventures* and *Silence* cases, namely that a "right" or "duty" must be "mature" before it is protected by Prop 209's Saving Clause. Here, Kush's rights as a judgment creditor holding the Nondischargeable Lien did not "mature" until after the effective date of Prop 209. For the purposes of this case, it matters not whether Kush's rights vis-a-vis the Debtor's homestead exemption "matured" on the date the Nondischargeable Judgment was entered or the date the Nondischargeable Lien was recorded or when Kush might seek to execute on that Nondischargeable Lien. All of these points in time occurred or could occur after Prop 209 became effective and after Debtor had a right to claim exempt up to $400,000 of equity in the Property.

This Court's finding does not affect the amount of Kush's underlying judgment amount because, in the words of the *Silence* court, that "award became immediately enforceable and payable before the enactment of Proposition 209."[87] The amount of Kush's claim and the enforceability of that claim against Debtor's non-exempt assets is not altered by Prop 209 or this Order.

Kush's efforts to limit Debtor's homestead exemption to the pre-Prop 209 amount of $250,000 fails for yet another reason. Debtor's pre-Petition Date "contracts or agreements" with Kush have been discharged. What was not discharged in Debtor's bankruptcy was Kush's pre-Petition Date tort fraud and/or conversion claims against Debtor. It is those tort claims which are memorialized in Kush's Nondischargeable Lien against Debtor's homesteaded Property. Prop 209's Saving Clause limits the applicability of Debtor's homestead exemption to $250,000 for "contracts and agreements" entered into before December 5, 2022, but does not preclude Debtor from exercising her homestead exemption rights up to $400,000 after December 5, 2022 as to Kush's nondischargeable <u>fraud</u> or <u>conversion</u> claims.

---

[87] *Silence* at 196.

Does this result seem inequitable? Perhaps, but it is not within this Court's authority to re-write Prop 209's Saving Clause to satisfy this Court's perception of what is or is not equitable. This Court is constrained by this Court's understanding of the language of the Saving Clause. Prop 209's Saving Clause protects pre-effective date "contract" rights but not a creditor's "fraud" or "conversion" claim rights.

But what about the Saving Clause's protection of rights and duties which matured before Prop 209's effective date? This Court finds Kush's fraud or conversion claims against Debtor were not "rights" against Debtor before Prop 209's effective date nor were they "mature." Kush may have come to possess a nondischargeable "right" or claim against Debtor prior to the effective date of Prop 209 but such right did not "mature" until the time the Nondischargeable Judgment was entered by this Court in favor of Kush and against the Debtor. That Nondischargeable Judgment was entered long after Prop 209's effective date. The homestead exemption claimed by Debtor in the Property is hereby allowed in the full amount of her equity in the Property, up to $400,000.

## VI.    CONCLUSION

Debtor's Property is exempt. This Court has jurisdiction to enter its final order on Debtor's Motion even though the Ninth Circuit's *Tillman* decision declares that Debtor's exempt homestead is no longer property of this bankruptcy estate. Notwithstanding the fact that the Debtor's Property is exempt, Kush still had the right to challenge Debtor's homestead exemption in the Property once Debtor filed her § 522(f) Motion. Section 522(f) does not preclude avoidance of a nondischargeable claim, nor does it preclude the avoidance of Kush's Nondischargeable Lien even though it was recorded nearly a year after the Petition Date. Finally, Debtor has carried her burden of proof on the Motion. The homestead exemption amount applicable to the Property is the Prop 209 $400,000 amount, not the pre-Prop 209 $250,000 homestead exemption amount.

1  Debtor's Motion to avoid Kush's Nondischargeable Lien to the extent it impairs

2  Debtor's equity in the Property up to $400,000 is hereby granted. Debtor's Motion

3  seeking the imposition of an injunction enjoining Kush's collection efforts is hereby

4  denied.

5  **ORDERED**

6

7  **DATED AND SIGNED ABOVE.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT 1



# ARIZONA 2022 GENERAL ELECTION PUBLICITY PAMPHLET

## NOVEMBER 8, 2022



# WHAT'S ON MY BALLOT?

## NO MATTER HOW YOU VOTE, YOUR VOTE COUNTS!

# 209 PROPOSITION

AN INITIATIVE MEASURE

**AMENDING SECTIONS 12-1598.10, 33-1101, 33-1123, 33-1125, 33-1126, 33-1131 AND 44-1201, ARIZONA REVISED STATUTES; RELATING TO PREDATORY DEBT COLLECTION PROTECTION.**

Be it enacted by the People of the State of Arizona:

Section 1. Section 12-1598.10, Arizona Revised Statutes, is amended to read:

12-1598.10. Continuing lien on earnings; order

A.  If it appears from the answer of the garnishee that the judgment debtor was an employee of the garnishee, or that the garnishee otherwise owed earnings to the judgment debtor when the writ was served, or earnings would be owed within sixty days thereafter and there is no timely written objection to the writ or the answer of the garnishee filed, on application by the judgment creditor the court shall order that the nonexempt earnings, if any, withheld by the garnishee after service of the writ be transferred to the judgment creditor who is entitled to such monies subject to the judgment debtor's right to objection and hearing pursuant to this article. The court shall further order that the garnishment is a continuing lien against the nonexempt earnings of the judgment debtor.

B.  If a timely objection is filed the court shall conduct a hearing pursuant to section 12-1598.07 and shall make the following determinations:

1.  Whether the writ is valid against the judgment debtor.

2.  The amount outstanding on the judgment at the time the writ was served, plus accruing costs.

3.  Whether the judgment debtor was employed by the garnishee at the time the writ was served.

4.  Whether earnings were owed or would be owed by the garnishee to the judgment debtor within sixty days after the service of the writ.

5.  Whether the debt was, at the time of service of the writ, subject to an effective agreement for debt scheduling between the judgment debtor and a qualified debt counseling organization.

C.  If the court makes an affirmative determination under subsection B, paragraph 1 of this section and subsection B, paragraph 3 or 4 of this section and determines that the debt was not, at the time of service of the writ, subject to an effective agreement between the judgment debtor and a qualified debt counseling organization, the court shall order that the nonexempt earnings, if any, withheld by the garnishee after service of the writ be transferred to the judgment creditor and further order that the garnishment is a continuing lien against the nonexempt earnings of the judgment debtor. Otherwise the court shall order the garnishee discharged from the writ.

D.  A continuing lien ordered pursuant to this section is invalid and of no force and effect on the occurrence of any of the following conditions:

1.  The underlying judgment is satisfied in full, is vacated or expires.

2.  The judgment debtor leaves the garnishee's employ for more than sixty days or, if the judgment debtor is an employee of a school district, a charter school, the Arizona state schools for the deaf and the blind or an accommodation school and the judgment debtor is subject to an employment contract that specifies that paydays are restricted to the school year, for more than ninety days.

3.  The judgment creditor releases the garnishment.

4.  The proceedings are stayed by a court of competent jurisdiction, including the United States bankruptcy court.

5.  The judgment debtor has not earned any nonexempt earnings for at least sixty days or, if the judgment debtor is an employee of a school district, a charter school, the Arizona state schools for the deaf and the blind or an accommodation school and the judgment debtor is subject to an employment contract that specifies that paydays are restricted to the school year, for at least ninety days.

6.  The court orders that the garnishment be quashed.

E.  If no objections are filed to the answer of the garnishee and an order of continuing lien is not entered within forty-five days

Case 2:23-bk-02120-DPC    Doc 114    Filed 02/05/25    Entered 02/05/25 16:21:58    Desc
Main Document    Page 30 of 36

⌐ ..ing of the answer of the garnishee, any earnings held by the garnishee shall be released to the judgment debtor and ⌐rnishee shall be discharged from any liability on the garnishment.

ℾ. If at the hearing the court determines that the judgment debtor is subject to the ~~twenty-five~~ TEN percent maximum disposable earnings provision under section 33-1131, subsection B and based on clear and convincing evidence that the judgment debtor or the judgment debtor's family would suffer extreme economic hardship as a result of the garnishment, the court may reduce the amount of nonexempt earnings withheld under a continuing lien ordered pursuant to this section from the ~~twenty-five~~ TEN percent to not less than ~~fifteen~~ FIVE percent.

G.  A court order entered pursuant to this section if recorded does not constitute a lien against real property pursuant to section 33-961.

H.  The court, sitting without a jury, shall decide all issues of fact and law.

Sec. 2. Section 33-1101, Arizona Revised Statutes, is amended to read:

33-1101. Homestead exemptions; persons entitled to hold homesteads; annual adjustment

A.  Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding ~~one hundred fifty thousand dollars~~ $400,000 in value, any one of the following:

1.  The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.

2.  The person's interest in one condominium or cooperative in which the person resides.

3.  A mobile home in which the person resides.

4.  A mobile home in which the person resides plus the land upon which that mobile home is located.

B.  Only one homestead exemption may be held by a married couple or a single person under this section. The value as specified in this section refers to the equity of a single person or married couple. If a married couple lived together in a dwelling house, a condominium or cooperative, a mobile home or a mobile home plus land on which the mobile home is located and are then divorced, the total exemption allowed for that residence to either or both persons shall not exceed ~~one hundred fifty thousand dollars~~ $400,000 in value.

C.  The homestead exemption, not exceeding the value provided for in subsection A, AS ADJUSTED BY SUBSECTION D OF THIS SECTION, automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter. Only one homestead exemption at a time may be held by a person under this section.

D.  THE HOMESTEAD EXEMPTION PROVIDED BY THIS SECTION SHALL BE ADJUSTED ANNUALLY BEGINNING ON JANUARY 1, 2024 AND THEREAFTER ON JANUARY 1 OF EACH SUCCESSIVE YEAR BY THE INCREASE IN THE COST OF LIVING. THE INCREASE IN THE COST OF LIVING SHALL BE MEASURED BY THE PERCENTAGE INCREASE AS OF AUGUST OF THE IMMEDIATELY PRECEDING YEAR OVER THE LEVEL AS OF AUGUST OF THE PREVIOUS YEAR OF THE CONSUMER PRICE INDEX (ALL URBAN CONSUMERS, UNITED STATES CITY AVERAGE FOR ALL ITEMS) OR ITS SUCCESSOR INDEX AS PUBLISHED BY THE UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, OR ITS SUCCESSOR AGENCY, WITH THE AMOUNT OF THE EXEMPTION ROUNDED UP TO THE NEAREST $100.

Sec. 3. Section 33-1123, Arizona Revised Statutes, is amended to read:

33-1123. Household furniture, furnishings and appliances; annual adjustment

A.  Household furniture and furnishings, household goods, including consumer electronic devices, and household appliances personally used by the debtor or a dependent of the debtor and not otherwise specifically prescribed in this chapter are exempt from process provided their aggregate fair market value does not exceed ~~six thousand dollars~~ $15,000.

B.  THE EXEMPTION PROVIDED BY THIS SECTION SHALL BE ADJUSTED ANNUALLY BEGINNING ON JANUARY 1, 2024 AND THEREAFTER ON JANUARY 1 OF EACH SUCCESSIVE YEAR BY THE INCREASE IN THE COST OF LIVING. THE INCREASE IN THE COST OF LIVING SHALL BE MEASURED BY THE PERCENTAGE INCREASE AS OF AUGUST OF THE IMMEDIATELY PRECEDING YEAR OVER THE LEVEL AS OF AUGUST OF THE PREVIOUS YEAR OF THE CONSUMER PRICE INDEX (ALL URBAN CONSUMERS, UNITED STATES CITY AVERAGE FOR ALL ITEMS) OR ITS SUCCESSOR INDEX AS PUBLISHED BY THE UNITED STATES DEPARTMENT

**PROPOSITION 209**

Case 2:23-bk-02120-DPC   Doc 114   Filed 02/05/25   Entered 02/05/25 16:21:58   Desc
Main Document   Page 31 of 36

OF LABOR, BUREAU OF LABOR STATISTICS, OR ITS SUCCESSOR AGENCY, WITH THE AMOUNT OF THE EXEMPTION ROUNDED UP TO THE NEAREST $100.

Sec. 4. Section 33-1125, Arizona Revised Statutes, is amended to read:

33-1125. Personal items

The following property of a debtor used primarily for personal, family or household purposes is exempt from process:

1. All wearing apparel of not more than a fair market value of five hundred dollars.

2. All musical instruments provided for the debtor's individual or family use of not more than an aggregate fair market value of four hundred dollars.

3. Horses, milk cows and poultry of not more than an aggregate fair market value of one thousand dollars.

4. All engagement and wedding rings of not more than an aggregate fair market value of two thousand dollars.

5. The library of a debtor, including books, manuals, published materials and personal documents of not more than an aggregate fair market value of two hundred fifty dollars.

6. One watch of not more than a fair market value of two hundred fifty dollars.

7. One typewriter, one computer, one bicycle, one sewing machine, a family bible or a lot in any burial ground of not more than an aggregate fair market value of two thousand dollars.

8. Equity in one motor vehicle of not more than ~~six thousand dollars~~ $15,000. If the debtor or debtor's dependent has a physical disability, the equity in the motor vehicle shall not exceed ~~twelve thousand dollars~~ $25,000. THE EXEMPTION PRESCRIBED IN THIS PARAGRAPH SHALL BE ADJUSTED ANNUALLY BEGINNING ON JANUARY 1, 2024 AND THEREAFTER ON JANUARY 1 OF EACH SUCCESSIVE YEAR BY THE INCREASE IN THE COST OF LIVING. THE INCREASE IN THE COST OF LIVING SHALL BE MEASURED BY THE PERCENTAGE INCREASE AS OF AUGUST OF THE IMMEDIATELY PRECEDING YEAR OVER THE LEVEL AS OF AUGUST OF THE PREVIOUS YEAR OF THE CONSUMER PRICE INDEX (ALL URBAN CONSUMERS, UNITED STATES CITY AVERAGE FOR ALL ITEMS) OR ITS SUCCESSOR INDEX AS PUBLISHED BY THE UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, OR ITS SUCCESSOR AGENCY, WITH THE AMOUNT OF THE EXEMPTION ROUNDED UP TO THE NEAREST $100.

9. Professionally prescribed prostheses for the debtor or a dependent of the debtor, including a wheelchair or motorized mobility device.

10. All firearms of not more than an aggregate fair market value of two thousand dollars.

11. All domestic animals or household pets.

Sec. 5. Section 33-1126, Arizona Revised Statutes, is amended to read:

33-1126. Money, benefits or proceeds; exception

A. The following property of a debtor is exempt from execution, attachment or sale on any process issued from any court:

1. All money received by or payable to a surviving spouse or child on the life of a deceased spouse, parent or legal guardian, not exceeding twenty thousand dollars.

2. The earnings of the minor child of a debtor or the proceeds of these earnings by reason of any liability of the debtor not contracted for the special benefit of the minor child.

3. All monies received by or payable to a person entitled to receive child support or spousal maintenance pursuant to a court order.

4. All money, proceeds or benefits of any kind to be paid in a lump sum or to be rendered on a periodic or installment basis to the insured or any beneficiary under any policy of health, accident or disability insurance or any similar plan or program of benefits in use by any employer, except for premiums payable on the policy or debt of the insured secured by a pledge, and except for collection of any debt or obligation for which the insured or beneficiary has been paid under the plan or policy and except for payment of amounts ordered for support of a person from proceeds and benefits furnished in lieu of earnings that would have been subject to that order and subject to any exemption applicable to earnings so replaced.

5. All money arising from any claim for the destruction of, or damage to, exempt property and all proceeds or benefits of any kind arising from fire or other insurance on any property exempt under this article.

Case 2:23-bk-02120-DPC    Doc 114    Filed 02/05/25    Entered 02/05/25 16:21:58    Desc
Main Document    Page 32 of 36

6.   The cash surrender value of life insurance policies where for a continuous unexpired period of two years the policies have been owned by a debtor. The policy shall have named as beneficiary the debtor's surviving spouse, child, parent, brother or sister. The policy may have named as beneficiary any other family member who is a dependent, in the proportion that the policy names any such beneficiary, except that, subject to the statute of limitations, the amount of any premium that is recoverable or avoidable by a creditor pursuant to title 44, chapter 8, article 1, with interest thereon, is not exempt. The exemption provided by this paragraph does not apply to a claim for the payment of a debt of the insured or beneficiary that is secured by a pledge or assignment of the cash value of the insurance policy or the proceeds of the policy. For the purposes of this paragraph, "dependent" means a family member who is dependent on the insured debtor for not less than half support.

7.   An annuity contract where for a continuous unexpired period of two years that contract has been owned by a debtor and has named as beneficiary the debtor, the debtor's surviving spouse, child, parent, brother or sister, or any other dependent family member, except that, subject to the statute of limitations, the amount of any premium, payment or deposit with respect to that contract is recoverable or avoidable by a creditor pursuant to title 44, chapter 8, article 1 is not exempt. The exemption provided by this paragraph does not apply to a claim for a payment of a debt of the annuitant or beneficiary that is secured by a pledge or assignment of the contract or its proceeds. For the purposes of this paragraph, "dependent" means a family member who is dependent on the debtor for not less than half support.

8.   Any claim for damages recoverable by any person by reason of any levy on or sale under execution of that person's exempt personal property or by reason of the wrongful taking or detention of that property by any person, and the judgment recovered for damages.

9.   A total of ~~three hundred dollars~~ $5,000 held in a single account in any one financial institution as defined by section 6-101. The property declared exempt by this paragraph is not exempt from normal service charges assessed against the account by the financial institution at which the account is carried. THE EXEMPTION PRESCRIBED IN THIS PARAGRAPH SHALL BE ADJUSTED ANNUALLY BEGINNING ON JANUARY 1, 2024 AND THEREAFTER ON JANUARY 1 OF EACH SUCCESSIVE YEAR BY THE INCREASE IN THE COST OF LIVING. THE INCREASE IN THE COST OF LIVING SHALL BE MEASURED BY THE PERCENTAGE INCREASE AS OF AUGUST OF THE IMMEDIATELY PRECEDING YEAR OVER THE LEVEL AS OF AUGUST OF THE PREVIOUS YEAR OF THE CONSUMER PRICE INDEX (ALL URBAN CONSUMERS, UNITED STATES CITY AVERAGE FOR ALL ITEMS) OR ITS SUCCESSOR INDEX AS PUBLISHED BY THE UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, OR ITS SUCCESSOR AGENCY, WITH THE AMOUNT OF THE EXEMPTION ROUNDED UP TO THE NEAREST $100.

10.   An interest in a college savings plan under section 529 of the internal revenue code of 1986, either as the owner or as the beneficiary. This does not include money contributed to the plan within two years before a debtor files for bankruptcy.

B.   Any money or other assets payable to a participant in or beneficiary of, or any interest of any participant or beneficiary in, a retirement plan under section 401(a), 403(a), 403(b), 408, 408A or 409 or a deferred compensation plan under section 457 of the United States internal revenue code of 1986, as amended, whether the beneficiary's interest arises by inheritance, designation, appointment or otherwise, is exempt from all claims of creditors of the beneficiary or participant. This subsection does not apply to any of the following:

1.   An alternate payee under a qualified domestic relations order, as defined in section 414(p) of the United States internal revenue code of 1986, as amended. The interest of any and all alternate payees is exempt from any and all claims of any creditor of the alternate payee.

2.   Amounts contributed within one hundred twenty days before a debtor files for bankruptcy.

3.   The assets of bankruptcy proceedings filed before July 1, 1987.

C.   Any person eighteen years of age or over, married or single, who resides within this state and who does not exercise the homestead exemption under article 1 of this chapter may claim as a personal property homestead exempt from all process prepaid rent, including security deposits as provided in section 33-1321, subsection A, for the claimant's residence, not exceeding two thousand dollars.

D.   This section does not exempt property from orders that are the result of a judgment for arrearages of child support or for a child support debt.

    Sec. 6. Section 33-1131, Arizona Revised Statutes, is amended to read:

    33-1131. <u>Definition; wages; salary; compensation</u>

A.   For the purposes of this section, "disposable earnings" means that remaining portion of a debtor's wages, salary or compensation for his personal services, including bonuses and commissions, or otherwise, and includes payments pursuant to a pension or retirement program or deferred compensation plan, after deducting from such earnings those amounts required by

PROPOSITION 209

Case 2:23-bk-02120-DPC    Doc 114    Filed 02/05/25    Entered 02/05/25 16:21:58    Desc
Main Document         Page 33 of 36

law to be withheld.

B.   Except as provided in subsection C, the maximum part of the disposable earnings of a debtor for any workweek ~~which~~ THAT is subject to process may not exceed ~~twenty-five per cent~~ TEN PERCENT of disposable earnings for that week or the amount by which disposable earnings for that week exceed ~~thirty~~ SIXTY times the APPLICABLE minimum hourly wage ~~prescribed by federal law~~ in effect at the time the earnings are payable, whichever is less. THE APPLICABLE MINIMUM HOURLY WAGE IS THE MINIMUM WAGE REQUIRED BY FEDERAL, STATE OR LOCAL LAW, WHICHEVER IS HIGHEST.

C.   The exemptions provided in subsection B do not apply in the case of any order for the support of any person. In such case, one-half of the disposable earnings of a debtor for any pay period is exempt from process.

D.   The exemptions provided in this section do not apply in the case of any order of any court of bankruptcy under chapter XIII of the federal bankruptcy act or any debt due for any state or federal tax.

Sec. 7. Section 44-1201, Arizona Revised Statutes, is amended to read:

44-1201. Rate of interest for loan or indebtedness; interest on judgments; definitions

A.   Interest on any loan, indebtedness or other obligation shall be AS FOLLOWS:

1.   THE MAXIMUM INTEREST RATE ON MEDICAL DEBT SHALL BE THE LESSER OF THE FOLLOWING:

(a)   THE ANNUAL RATE EQUAL TO THE WEEKLY AVERAGE ONE-YEAR CONSTANT MATURITY TREASURY YIELD, AS PUBLISHED BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, FOR THE CALENDAR WEEK PRECEDING THE DATE WHEN THE CONSUMER WAS FIRST PROVIDED WITH A BILL, OR

(b)   THREE PERCENT A YEAR.

THE MAXIMUM INTEREST RATE PROVIDED PURSUANT TO THIS PARAGRAPH ALSO APPLIES TO ANY JUDGMENTS ON MEDICAL DEBT.

2.   FOR ANY LOAN, INDEBTEDNESS OR OBLIGATION OTHER THAN MEDICAL DEBT, INTEREST SHALL BE at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to. Interest on any judgment, OTHER THAN A JUDGMENT ON MEDICAL DEBT, that is based on a written agreement evidencing a loan, indebtedness or obligation that bears a rate of interest not in excess of the maximum permitted by law shall be at the rate of interest provided in the agreement and shall be specified in the judgment.

B.   Unless specifically provided for in statute or a different rate is contracted for in writing, interest on any judgment OTHER THAN A JUDGMENT ON MEDICAL DEBT shall be at the lesser of ten per cent per annum or at a rate per annum that is equal to one per cent plus the prime rate as published by the board of governors of the federal reserve system in statistical release H.15 or any publication that may supersede it on the date that the judgment is entered. The judgment shall state the applicable interest rate and it shall not change after it is entered.

C.   Interest on a judgment on a condemnation proceeding, including interest that is payable pursuant to section 12-1123, subsection B, shall be payable as follows:

1.   If instituted by a city or town, at the rate prescribed by section 9-409.

2.   If instituted by a county, at the rate prescribed by section 11-269.04.

3.   If instituted by the department of transportation, at the rate prescribed by section 28-7101.

4.   If instituted by a county flood control district, a power district or an agricultural improvement district, at the rate prescribed by section 48-3628.

D.   A court shall not award either of the following:

1.   Prejudgment interest for any unliquidated, future, punitive or exemplary damages that are found by the trier of fact.

2.   Interest for any future, punitive or exemplary damages that are found by the trier of fact.

E.   For the purposes of subsection D of this section, "future damages" means damages that will be incurred after the date of the judgment and includes the costs of any injunctive or equitable relief that will be provided after the date of the judgment.

F.   If awarded, prejudgment interest shall be at the rate described in subsection A or B of this section.

G.   FOR THE PURPOSES OF THIS SECTION:

1.   "HEALTH CARE SERVICES" MEANS SERVICES PROVIDED AT OR BY ANY OF THE FOLLOWING:

(a)   HEALTH CARE INSTITUTIONS AS DEFINED IN SECTION 36-401.

Case 2:23-bk-02120-DPC   Doc 114   Filed 02/05/25   Entered 02/05/25 16:21:58   Desc
Main Document      Page 34 of 36

(b)  PRIVATE OFFICES OR CLINICS OF HEALTH CARE PROVIDERS LICENSED UNDER TITLE 32, CHAPTERS 7, 11, 13, 15, 15.1, 16, 17, 18, 19, 19.1, 25, 28, 33, 34, or 35.

(c)  AMBULANCES OR AMBULANCE SERVICES AS DEFINED IN SECTION 36-2201.

2.  "MEDICAL DEBT" MEANS A LOAN, INDEBTEDNESS OR OTHER OBLIGATION ARISING DIRECTLY FROM THE RECEIPT OF HEALTH CARE SERVICES OR OF MEDICAL PRODUCTS OR DEVICES.

Sec. 8. Conflicts with federal law

This act shall not be interpreted or applied so as to create any power or duty in conflict with federal law.

Sec. 9. Severability

If a provision of this act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act that can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

Sec. 10. Saving clause

This act applies prospectively only. Accordingly, it does not affect rights and duties that matured before the effective date of this act, contracts entered into before the effective date of this act or the interest rate on judgments that are based on a written agreement entered into before the effective date of this act.

Sec. 11. Legal defense

The People of Arizona desire that this initiative, if approved by the voters, be defended if it is challenged in court. They therefore declare that the political committee registered to circulate petitions and campaign in support of the adoption of the initiative, or any one or more of its officers, has standing to defend this initiative on behalf of and as the agent of the People of Arizona in any legal action brought to challenge the validity of this initiative.

Sec. 12. Short title

This act may be cited as the "Predatory Debt Collection Protection Act."

## ANALYSIS BY LEGISLATIVE COUNCIL

Proposition 209 would increase the following debt collection exemptions (and would also provide that the exemption amounts would be increased annually based on the change in the United States Department of Labor consumer price index):

1.  The homestead exemption on a debtor's home would increase from $250,000 to $400,000.

2.  The exemption on a debtor's household furniture, furnishings, goods and appliances would increase from $6,000 to $15,000.

3.  The exemption on the debtor's equity in one motor vehicle would increase from $6,000 to $15,000, or if the debtor has a physical disability, from $12,000 to $25,000.

4.  The exemption on a debtor's single account in one financial institution would increase from $300 to $5,000.

Proposition 209 would decrease the portion of a debtor's weekly disposable earnings that is subject to debt collection actions (other than support payments) to the lesser of 10% of the disposable earnings or sixty times the highest applicable federal, state or local minimum wage.  Currently the amount of disposable earnings that is subject to debt collection actions (other than support payments) is the lesser of 25% of the disposable earnings or thirty times the federal minimum wage. Additionally, in a garnishment action, if the court determines by clear and convincing evidence that the 10% calculation on disposable earnings would cause extreme economic hardship to the debtor or the debtor's family, the court may reduce the amount to 5% of disposable income.  Currently, the court may reduce the amount to 15% of disposable income.

Proposition 209 would lower the maximum interest rate on medical debt (an obligation arising directly from the receipt of medical products or devices or the receipt of health care services provided at or by licensed health care institutions, the offices or clinics of most licensed health care providers or ambulance services) from the current rate of 10% per year (unless a different rate is contracted for in writing) to the lesser of 3% or an annual rate equal to the weekly average one-year constant maturity treasury yield, as published by the Federal Reserve Board, for the calendar week preceding the date when the consumer was first provided with a bill. The new maximum rate would also apply to judgments on medical debt.

Proposition 209 would only apply to contracts and agreements entered into on or after the effective date of this measure. The proponents' political committee would have standing to defend the measure in any legal challenge.

PROPOSITION 209

Case 2:23-bk-02120-DPC    Doc 114    Filed 02/05/25    Entered 02/05/25 16:21:58    Desc
Main Document    Page 35 of 36

**Notice:** Pursuant to Proposition 105 (1998), these measures cannot be changed in the future if approved on the ballot except by a three-fourths vote of the members of each house of the legislature and if the change furthers the purpose of the original ballot measure, by an initiative petition or by referring the change to the ballot.

## JOINT LEGISLATIVE BUDGET COMMITTEE FISCAL ANALYSIS
### PROPOSITION 209 (I-05)

A.R.S. § 19-123(E) requires the Joint Legislative Budget Committee Staff to prepare a summary of 300 words or less on the fiscal impact of voter-initiated ballot measures. Proposition 209 would a) lower the interest rate cap on medical debt, b) increase the amount of equity in a person's home that is protected from certain creditors, including tax liens from state and local governments c) increase the dollar value of personal property and assets exempt from the claims of creditors, and d) increase the amount of earnings that is exempt from the claims of creditors.

The proposition is not generally expected to have a direct impact on the state's General Fund revenues. The increase of the amount of equity protected from creditors under the measure, however, could adversely affect the ability to collect tax liens, which may reduce state and local tax revenues relative to current law. The amount of the potential state and local tax revenue loss cannot be determined in advance.

**PROPOSITION 209**

**108**